UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| | ) | 2:20-CR-33 |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| BRAXTON GAITOR, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**REPORT AND RECOMMENDATION**

Before the Court is Defendant Gaitor's Motion to Suppress [Doc. 92]. This matter is before the Court pursuant to 28 U.S.C. § 636(b) and the standing orders of the District Court for a Report and Recommendation. For the reasons stated herein, the undersigned **RECOMMENDS** that the Motion to Suppress [Doc. 92] be **DENIED**.

**I.    FACTUAL BACKGROUND**

This Court previously held a hearing on a Suppression Motion [Doc. 27] filed by Janmichael Vincent Lingo, a co-defendant in this matter. Defendant Lingo sought to suppress evidence from a December 27, 2019 search of a residence at 613 Montgomery Street in Johnson City, Tennessee. The Court subsequently submitted a Report and Recommendation [Doc. 53] to the District Court recommending that the District Court deny the Motion. The District Court later adopted the Report and Recommendation. [Doc. 84]. Between the filing of Defendant Lingo's motion and the entry of the District Court's Order adopting this Court's Report and Recommendation, Defendant Gaitor was added as a Defendant in this matter through a

Superseding Indictment. [Doc. 36]. Defendant Gaitor was arraigned on charges in the superseding indictment only after Defendant Lingo's suppression hearing was conducted. [Docs. 42, 46].

The instant suppression motion was filed on June 25, 2021. Therein, Defendant Gaitor adopts Defendant Lingo's argument that evidence recovered from the December 27, 2019 search should be suppressed for lack of probable cause. At a hearing to address the motion, Defendant Gaitor did not offer any additional evidence and acknowledged that her arguments and reasoning were identical to those presented by Defendant Lingo as to the issue of probable cause. Given that the Court has been presented with the same arguments here as were presented by Defendant Lingo, the Court finds it appropriate to incorporate by reference the factual findings and legal conclusions contained in its previously issued Report and Recommendation [Doc. 53].

Defendant Gaitor separately argues that even if the search is permissible, the search warrant did not extend to a search of her purse. [Doc. 92, p. 1]. Defendant Gaitor, citing to the search warrant affidavit, points out that the search was executed to locate specific items tying Defendant Lingo to a homicide scene. [Doc. 92, p. 2-4]. According to the search warrant affidavit, the search of the residence was to facilitate seize the following items:

   1. Digital or electronic devices to communicate.

   2. Any clothing matching the clothing worn in the surveillance video.

   3. Any illegally possessed firearms and illegally possessed ammunition.

[Doc. 92, p. 4; Doc. 92-1].

In support of her contention, Defendant Gaitor notes she did not live at the place being searched and was not mentioned in the search warrant affidavit. [Doc. 92, p. 4]. Defendant Gaitor asserts the record is devoid of evidence suggesting that law enforcement had reason to believe items covered by the warrant would be found in her purse. [Doc. 92, p. 8]. Defendant Gaitor further

notes that the Government has failed to demonstrate that Defendant Lingo or any other person aside from Defendant Gaitor had access to the purse, which she contends clearly indicated to officers that the items listed on the search warrant would not be found in the purse. [Doc. 92, p. 9]. After Defendant Gaitor filed her suppression motion, the Government filed a Response in Opposition arguing Defendant Gaitor's motion should be denied without a hearing. [Doc. 95].

A suppression hearing was held before the undersigned on July 12, 2021. At that time the parties proceeded by proffer and introduction of exhibits only. The Government argued that a search of the purse fell within the scope of the search warrant. In support, the Government introduced a set of photographs taken at the time of the search that showed the location of the purse on what appears to be a coffee table. [Ex. 1]. Following the introduction of the photograph, parties agreed the purse was found in a common area of the home, specifically the living room. Exhibit 1, a collection of photographs taken during the execution of the search warrant, contained an image depicting what appears to be a small, clutch-style purse with an attached wrist strap. When questioned by the Court, Defendant's counsel agreed the purse was large enough to hold most modern cellular telephones and potentially a limited amount of ammunition depending on the type. On the other hand, defense counsel maintained that a firearm could not plausibly fit in the small, clutch-style purse.

Despite defense counsel's concession that a cellphone or bullet could fit in the small purse, Defendant maintained that a search of the purse exceeded the scope of the warrant. Defendant asserts this privacy interest based in part on what she characterizes as the connection of the handbag to her person, arguing that the purse was so closely associated with her at the time of the search that law enforcement executing a warrant should have known it was not a place where the items to be seized would be found. Further, she contends that the purse is an item presumed by

society to be uniquely personal to the owner, providing the owner with a privacy interest that society accepts as reasonably and even a co-occupant of the residence would know was inappropriate to disregard.

As referenced above, the photographs presented at the hearing indicate that the purse was located on the coffee table in a common area of the residence at issue. There was no mention at the hearing or in her pleadings of Defendant being in the vicinity of the purse when the search warrant was executed or even being present in the residence when the search was conducted. There was also no evidence presented to demonstrate that Defendant Gaitor contemporaneously notified officers executing the warrant that she claimed an ownership interest in the purse.

In addition to the discussion of Defendant Gaitor's rights in the purse, a portion of the hearing was devoted to addressing whether Defendant Gaitor was a resident of 613 Montgomery Street at the time of the search. Defendant Gaitor suggested she had merely visited the searched residence. Conversely, as proof that Defendant Gaitor was living at the residence, the Government submitted a utility bill for the 613 Montgomery Street home which indicated that she was the person responsible for the utility charges. [Ex. 1]. For purposes of determining whether the purse at issue was properly searched, the Court does not find it necessary to make a factual determination as to whether Defendant Gaitor resided of the 613 Montgomery Street home.

## II. ANALYSIS

In analyzing the admissibility of evidence obtained from Defendant Gaitor's purse on December 27, 2019, the Court first observes that the Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. These protections extend to those places a person "seeks to preserve as private, even in an area accessible to the public." *Katz v. United States*, 389 U.S. 347,

351 (1967). However, "[a]n expectation of privacy does not give rise to Fourth Amendment protection…unless society is prepared to accept that expectation as objectively reasonable." *California v. Greenwood*, 486 U.S. 35, 39-40 (1988). A party must have an expectation of privacy in property in order to assert standing to challenge its search. *United States v. Williams,* 354 F.3d 497, 510–11 (6th Cir.2003). Overnight guests are among persons courts have recognized as having a reasonable expectation of privacy requisite to these challenges. *United States v. Allen*, 720 F. App'x 254, 257 (6th Cir. 2018). Here, the hearing record is limited to the record previously before the Court from the hearing held on Defendant Lingo's suppression motion, additional proffer and argument, and a limited number of exhibits. Among the exhibits offered was the utility bill indicating that Defendant Gaitor paid the utilities at the searched residence. Even so, Defendant Gaitor has not characterized herself as living or even sleeping at the residence; however, the Court notes that in some circumstances a defendant need not necessarily stay in a location overnight to exercise standing. *United States v. Waller*, 426 F.3d 838, 842 (6th Cir. 2005)(reversing a district court's determination that a defendant lacked standing to challenge a warrantless search of the defendant's suitcase where that defendant stored his luggage at another person's residence but did not sleep at that residence).

If the Court assumes Defendant Gaitor has standing to challenge the search of the purse, it must then consider whether the search was permissible based on the scope of the issued search warrant and the location of the handbag at the time of the search. In considering this question, the Court notes that "an otherwise valid search becomes an impermissible general search only where the searching officers demonstrate a flagrant disregard for the limitations of a search warrant." *Marcilis v. Twp. of Redford*, 693 F.3d 589, 602 (6th Cir. 2012); *see e.g. United States v. Booker*, No. 3:18-CR-00250, 2020 WL 2733727, at *11 (M.D. Tenn. May 26, 2020)(concluding that

officers could search a toilet for documents specifically covered by a search warrant for a physical address where the listed documents might have been hidden or disposed of in a toilet). In this matter, the Court is specifically asked to decide whether Defendant Gaitor's small clutch style purse located in a home subject to a valid warrant may be searched when she admits that at least certain items covered by the warrant could plausibly be concealed in it.

In *United States v. Herrera*, 636 F. App'x 250, 252-53 (6th Cir. 2016), the Sixth Circuit analyzed a similar issue, i.e. whether a search warrant for a residence covered bags brought into it by a visitor. There, the Sixth Circuit offered the following primer on the extent of search warrants:

> As the Supreme Court has held, "[a] lawful search of fixed premises generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search." *United States v. Ross,* 456 U.S. 798, 820–821, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982). And as this Court has further explained, when a warrant has "authorized [ ] officers to look anywhere on [a particular] property for a small, easy-to-conceal item, it would be extremely difficult ... to establish that the officers searched in places not authorized." *United States v. Garcia,* 496 F.3d 495, 498 (6th Cir.2007).

*Id.* Applying that guidance, the *Herrera* Court noted "a warrant allows the police to search any container found within the residence that could reasonably contain [items covered by the warrant]. . ." and concluded that a search of the bags was appropriate even if they were temporarily on the site. *Id.* The Circuit Court expressly rejected the argument that the bags were not covered by the warrant because they were not contemplated when the warrant was issued and explained "a warrant relates to the premises as the police find them." *Id.* Moreover, the *Herrera* Court noted that there was a questioned of whether defendant even had standing to challenge the search of the bags because he neither claimed ownership interest in the bags nor admitted that he was the person seen carrying the bags into the residence. *Id.* at 252-53; *see also United States v. Sissler*, 966 F.2d 1455 (table), 1992 WL 126974 at *5 (6th Cir. 1992).

As in *Herrera*, Defendant here claims an interest in a bag brought into a residence subject to a valid search warrant but does not demonstrate that she had possession of the purse, asserted an ownership interest in it or contemporaneously objected to the search of it. Additionally, no facts were presented to indicate that the purse was locked or otherwise inaccessible to those who would have access to the living room, including Defendant Lingo. *Herrera* informs this Court that the search warrant for 613 Montgomery Street covered the property as officers found it. In executing the instant warrant and looking for items to be seized, a reasonable law enforcement officer could conclude that the purse identified in Exhibit 1 might contain such items.

It is also plausible to believe that a criminal suspect might quickly stow away items such as phones or ammunition in the nearest closed container such as a purse, cabinet, or drawer if they thought the police were about to walk through the interior of their home. *See United States v. Booker*, 2020 WL 2733727, at *11 (citing to cases where even the cutting into of an interior wall and the jackhammering of a portion of a concrete pad were found to be proper).

The Court cannot find that the search of an unattended purse on a coffee table in an open gathering area on the premises to be searched indicates that law enforcement disregarded the scope of the search warrant, much less that they did so flagrantly as would be required to find suppression appropriate. In fact, given the record before the Court, there is no reason to believe that officers had any indication that Defendant Gaitor owned the purse at the time it was searched. As such, the Court finds that the evidence obtained from a search of the purse is not subject to suppression.

### III. CONCLUSION

For the reasons contained in its previously issued Report and Recommendation [Doc. 53] and those outlined above, the undersigned **RECOMMENDS** that Defendant's Motion to Suppress [Doc. 92] be **DENIED**.[1]

Respectfully Submitted,

/s Cynthia Richardson Wyrick
United States Magistrate Judge

---

[1] **Any objections to this report and recommendation must be served and filed within 10 days**. *See* Fed. R. Crim. P. 59(b)(2). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); *see United States v. Branch*, 537 F.3d 582 (6th. Cir. 2008); *see also Thomas v. Arn*, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the time period waives the right to appeal the District Court's order). The District Court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive, or general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987). Absent extraordinary circumstances, no extensions of the objection and response deadlines will be granted.